IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Wiley Y. Daniel

Civil Action No. 06-cv-00568-WYD

ROBERT P. FRY,

      Applicant,

v.

AL ESTEP, Warden, Limon Corr. Facility, and
JOHN SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

---

## ORDER OF DISMISSAL

---

      Applicant Robert P. Fry is a prisoner in the custody of the Colorado Department

of Corrections (DOC) at the Limon, Colorado, Correctional Facility.  On March 20,

2006, Mr. Fry submitted a *pro se* Application for a Writ of Habeas Corpus Pursuant to

28 U.S.C. § 2254 challenging his State of Colorado conviction and sentence.  He then

filed an Amended Application on April 17, 2006.  On May 16, 2006, I ordered

Respondents to answer the Application, which they did on June 5, 2006.  In the

Answer, Respondents argue that Applicant did not exhaust his state court remedies

with respect to his double jeopardy claim and his cruel and unusual punishment claim.

(Answer at 11.)  Mr. Fry then on June 28, 2006, attempted to amend the April 17, 2006,

Amended Application by filing a Motion to Amend, in which he states that he seeks to

withdraw Claim Three.  I entered an order on July 27, 2007, instructing Mr. Fry that the

June 28, 2006, Motion is denied and that he is required to file a proper Amended

Application on a Court-approved form and to state all claims that he now desires to present to the Court.

Mr. Fry then filed a Motion to Amend Habeas Application along with a tendered Second Amended Application on August 21, 2006.  In the Motion to Amend, Applicant asserts that although he did not exhaust his cruel and unusual punishment claim, he did exhaust his double jeopardy claim.  Respondents failed to respond to the Motion.  I, therefore, ordered the Clerk of the Court, on October 4, 2006, to file the tendered Second Amended Application.  Respondents then responded to Applicant's August 21, 2006, Motion to Amend and again asserted that Applicant had not exhausted his double jeopardy claim.

Subsequently, on December 13, 2006, Applicant filed a document titled, Additional Pleadings, in which he restates the same claims he asserted in the Second Amended Application and again argues that he has exhausted his double jeopardy claim.  I construe the Additional Pleadings document as a Reply to Respondents Answer.  On June 4, 2007, Applicant also filed a "Motion to Supplement Evidence in Support of Habeas Application Pursuant to F.R.E. 201."  In support of the Motion, Mr. Fry attached several exhibits including (1) the pathological diagnoses of the skeletonized remains of the victim in Applicant's state criminal proceedings, (2) a letter from the Director of the Laboratory for Human Identification at Colorado State University regarding the skeletonized remains of the victim, (3) a certificate of death for the victim, (4) a letter from the Attorney Regulation Counsel for the State of Colorado regarding Applicant's request for an investigation of his trial counsel in his criminal

-2-

proceeding, (5) a filing by the prosecutor in his state criminal case regarding the aggravating circumstances in Applicant's case, and (6) a statement about Applicant's classification at the DOC.  Applicant's Supplement Evidence and attached Exhibits do not provide significant or relevant new evidence and simply restate the claims that Applicant stated in the Reply and in the Second Amended Application.

Furthermore, on July 3, 2007, Mr. Fry filed yet another pleading titled, "Applicant's Reply Brief and Motion for Evidentiary Hearing."  The pleading like Applicant's other supplemental filings is no more than a restatement of the claims he raises in his Second Amended Application.

Nonetheless, I will consider the Second Amended Application filed August 21, 2006, and the Reply, filed December 13, 2006, along with the June 4, 2007, Supplement of Evidence and the July 3, 2007, Reply Brief in determining the merits of Applicant's claims.

I must construe liberally Mr. Fry's Second Amended Application, Reply and additional filings because he is a *pro se* litigant.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, I should not act as a *pro se* litigant's advocate.  *See Hall*, 935 F.2d at 1110.  After reviewing the entire file, I find that an evidentiary hearing is not necessary nor is the appointment of counsel.  For the reasons stated below, the Application will be denied.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Mr. Fry pled guilty in the Arapahoe County District Court on September 27, 2001, to one count of second-degree murder, one count of second-degree kidnapping,

and one count of a crime of violence.  Applicant was sentenced to forty-eight years for second-degree murder and to twelve years for second-degree kidnapping, with the twelve-year sentence running consecutive to the forty-eight-year sentence.  Applicant did not appeal the plea.  However, he did file a Colo. R. Crim. P. 35(c) postconviction motion.  The state trial court denied the postconviction motion.

Mr. Fry appealed the trial court's denial of his postconviction motion.  The Colorado Court of Appeals affirmed the trial court's denial, and the Colorado State Supreme Court denied Applicant's writ of certiorari.

After review of the Second Amended Application, the Reply, and the Supplements, I find that Mr. Fry asserts the following claims for relief in the instant action and contends that the claims were raised and exhausted in state court proceedings:

1.    Applicant's plea was entered in violation of his Sixth Amendment rights.

2.    Applicant was denied effective assistance of counsel in violation of his Sixth Amendment rights.

3.    Applicant's conviction constitutes double jeopardy in violation of his Fifth Amendment rights.

4.    Applicant's sentence was enhanced illegally in violation of **Apprendi** and **Blakely**.

Respondents concede that the instant action is timely.  *See* 28 U.S.C. § 2244(d).

## II.  EXHAUSTION OF STATE REMEDIES

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies

-4-

or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.  "The exhaustion requirement is not one to be overlooked lightly."  *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).

My review of the briefs that Mr. Fry filed in the state court postconviction proceedings reveals he did not properly raise the double jeopardy claim on appeal.  In Applicant's opening brief submitted to the state court of appeals, Mr. Fry refers to the claims that he raised in the state district court, which included a double jeopardy claim. (Second Am. Application, Ex. A at 4.)  He, however, stated in the opening brief that he filed in the state court of appeals that the issues he is raising before the state court of appeals include (1) that the district court's denial of the postconviction motion must be vacated, (2) that he was convicted and sentenced in violation of his Sixth and Fourteenth Amendment rights due to ineffective assistance of counsel and willful prosecutorial misconduct, (3) that defense counsel was ineffective in his failure to properly review the plea agreement and to allow the imposing of an illegal sentence,

(4) that the district court erred in failing to appoint alternate counsel in his

postconviction

proceeding after appointed counsel was allowed to withdraw, and (5) that the district

court lacked subject matter jurisdiction.  (Answer, Ex. A at 1.)

Mr. Fry even concedes that the double jeopardy claim was not specifically

argued before the state court of appeals, but argues that the claim was a valid claim

before the district court, was never withdrawn, and was raised with the Colorado

Supreme Court.  (Second Am. Application at 6-D.)  Applicant contends that because

the claim was raised in more than one state court, which included the Colorado

Supreme Court, the claim is exhausted.

Mr. Fry must present a claim to the state court of appeals for consideration.

Simply because Applicant raises a claim in the district court in a postconviction motion

and subsequently presents the claim to the Colorado Supreme Court without raising the

claim with the Colorado Court of Appeals does not mean that he has exhausted his

state court remedies.  Therefore, I find that Mr. Fry's double jeopardy claim is

unexhausted.  The claim also is procedurally barred.  C.R.S. § 16-5-402 and Colo. R.

Crim P. 35(c)(3)(VII).

As a general rule, federal courts "do not review issues that have been defaulted

in state court on an independent and adequate state procedural ground, unless the

default is excused through a showing of cause and actual prejudice or a fundamental

miscarriage of justice."  *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998).

Application of this procedural default rule in the habeas corpus context is based on

comity and federalism concerns.  ***See Coleman v. Thompson***, 501 U.S. 722, 730

(1991).  Mr. Fry's ***pro se*** status does not exempt him from the requirement of

demonstrating either cause and prejudice or a fundamental miscarriage of justice.  ***See***

***Lepiscopo v. Tansy***, 38 F.3d 1128, 1130 (10th Cir. 1994).

In an attempt to demonstrate cause and prejudice or a fundamental miscarriage

of justice, Mr. Fry asserts in his December 13, 2006, Reply that he is innocent of the

crime of kidnapping.  (Dec. 13, 2006, Reply at 3.)  He contends that the charge of

kidnapping was illegally included in the plea simply to increase his sentence and that

he can not be convicted of two or more charges for one continuous criminal episode.

(Dec. 13, 2006, Reply at 2-3.)  Mr. Fry, as will be discussed below, knowingly and

voluntarily entered into a plea agreement that included the charge of kidnapping.

Claiming innocence of the kidnapping charge now does not demonstrate cause and

prejudice or a fundamental miscarriage of justice.

Mr. Fry argues that the conviction and sentencing for the kidnapping offense

was only added to secure additional punishment and distinct aggravated sentences for

only one factual crime.  (Second Am. Application at 6-6-C.)  He further asserts that if he

is actually guilty of second-degree murder forty-eight years is the maximum sentence

allowed by law and there is no clause in Colo. Rev. Stat. § 18-3-103 that allows the

district attorney to add more punishment under the guise of a separate crime.  (Second

Am. Application at 6-C.)  He further contends that Colo. Rev. Stat. § 18-1-408 prohibits

the court from imposing consecutive sentences of two or more charges which stem from

one continuous criminal episode.  (Second Am. Application at 6-C.)  Mr. Fry also

contends that in his case there were not multiple crimes, multiple victims, or multiple convictions.  (Second Am. Application at 6-C.)

In the Answer, Respondents argue that the basis for Applicant's double jeopardy claims is unclear.  (Answer at 19.)  Respondents further assert that the allegations are so vague and conclusory that they do not warrant federal habeas corpus relief. (Answer at 19.)  Respondents contend that Mr. Fry pled to a lesser offense in order to avoid a life without parole sentence, and his plea did not violate the constitution. (Answer at 19.)  Respondents further contend that the initial first-degree murder charge was dismissed so no double jeopardy violation occurred.  (Answer at 19.)

Even if Mr. Fry's double jeopardy claim was properly before this Court, Applicant does not assert a double jeopardy claim.  The Double Jeopardy Clause of the Fifth Amendment provides protection against multiple criminal punishments for the same offense.  ***See Hudson v. United States***, 522 U.S. 93, 99 (1997).  The Double Jeopardy Clause provides three separate protections for criminal defendants: against prosecution for the same offense after an acquittal, against prosecution for the same offense after a conviction, and against multiple punishments for the same offense. ***North Carolina v. Pearce****, 395 U.S. 711, 717 (1969), **overrruled on other grounds by Alabama v. Smith***, 490 U.S. 794 (1989).

As stated above Applicant pled to the second-degree murder charge, the kidnapping charge, and the crime of violence charge.  None of the charges would be considered multiple punishments.  Each of the charges are separate and distinct.  I, therefore, find no violation of the Double Jeopardy Clause based on Applicant's guilty

plea to one count of second-degree murder, one count of second-degree kidnapping, and one count of a crime of violence.  Applicant's claim is without merit.

### III.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003).  The threshold question pursuant to § 2254(d)(1) is whether Mr. Fry seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000) (Stevens, J., writing for the Court).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412 (O'Connor, J., writing for the Court).  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal

law. *See id.* at 404-05.

The "contrary to" clause allows a writ of habeas corpus to issue "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. The "unreasonable application" clause allows a writ of habeas corpus to issue "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See id.* at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct, and Mr. Fry bears the burden of rebutting the presumption by clear and convincing evidence.

I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or

-10-

unreasonably applies clearly established federal law, or is based on an unreasonable

determination of

the facts in light of the evidence presented." *Id.* at 1178.  "[T]his 'independent review'

should be distinguished from a full de novo review of the petitioner's claims." *Id.*

## IV.  MERITS OF THE CLAIMS

### 1.  Plea Violates Sixth Amendment

Applicant asserts that defense counsel failed to inform him that there were

mitigating circumstances with respect to the murder, that by law he could not kidnap a

dead body and that counsel was required to investigate all aspects of his case before

advising him that he should enter a plea of guilty.  (Second Am. Application at 5-B.)

Mr. Fry also contends that the district attorney "concocted" a plea offer that included a

fabricated offense of kidnapping because he needed to "come up with" an additional

felony for the purpose of sentencing.  (Second Am. Application at 5-B and 5-D.)

Applicant further asserts that his defense counsel and the district attorney informed him

that he should enter into the plea to second-degree murder and kidnapping so that he

would avoid the possibility of either life without parole or the death penalty.  (Second

Am. Application at 5-B.)  Mr. Fry concludes that his plea was entered in violation of the

Fed. R. Crim. P. 11 and was involuntary, unintelligent, and entered into without

knowledge.  (Second Am. Application at 5.)

In the Answer, Respondents argue that Mr. Fry was thoroughly advised of his

plea by the court and by counsel during his providency hearing.  (Answer at 13.)

Respondents also argue that the record reflects Mr. Fry understood the nature and

consequences of his plea, and he was an active participant during the proceeding. (Answer at 13.)  Respondents further assert that Applicant can plead guilty to an offense that he simultaneously claims he did not commit if it is in his tactical interest to do so.  (Answer at 13.)  Respondents also contend that the prosecutor stated a factual

basis for Mr. Fry's first-degree murder charge, and Applicant did not dispute the prosecutor's statement.  (Answer at 14.)

Respondents further contend that Applicant did not protest his innocence at the providency hearing when he was informed that even though there was no factual basis for the kidnapping charge, but he did insist that he wanted to plead guilty to the kidnapping charge and to the second-degree murder charge in order to obtain the benefit of a plea bargain and to avoid a sentence of life without parole.  (Answer at 14.) Respondents also assert that Applicant only is contesting the kidnapping portion of his plea agreement.  (Answer at 13., N. 3.)

Respondents, citing to **North Carolina v. Alford**, 400 U.S. 25, 36 (1970), also argue that the Constitution does not bar the imposition of a sentence upon an individual who is willing to waive a trial and accept a sentence even when the individual is unwilling to admit his guilt.  Respondents, therefore, conclude that there is no federal constitutional violation with respect to Applicant's plea.  (Answer at 15.)

In the December 13, 2006, Reply, Mr. Fry asserts that he intends to include all three offenses in his invalid plea claim and not just the kidnapping offense.  (Dec. 13, 2006, Reply at 9.)  Applicant further asserts that there is no factual basis for the

kidnapping offense and for the crime of violence offense.  (Dec. 13, 2006, Reply at 9.)

Mr. Fry also contends that the cause of death by strangulation, as stated by the

prosecutor, is not accurate and that he was convicted based on false information.

(Dec. 13, 2006, Reply at 9.)  He further contends, relying on *United States v. Gigot*,

147 F.3d 1193-98 (10th Cir. 1998), that his plea is invalid because he was not asked to

explain in his own words what happened, and the trial court failed to inquire into the

basis for his belief of guilt and to reveal the elements of the offenses.  (Dec. 13, 2006,

Reply at 9.)

The Colorado Court of Appeals found that the factual basis for a guilty plea may

be waived by a defendant and the defendant may plead guilty to an offense that he

simultaneously claims not to have committed, if in light of the evidence against him it is

tactically in his best interest to do so.  *People of the State of Colorado v. Fry*, No. 04-

CV-0201 at 3-4 (Colo. App. May 12, 2005) (Unpublished).

To establish whether a defendant's constitutional rights were met the

circumstances must demonstrate that the defendant understood the nature and

consequences of the charges and plea and voluntarily chose to plead guilty.  *Boykin v.*

*Alabama*, 395 U.S. 238, 242-44 (1969); *Cunningham v. Diesslin*, 92 F.3d 1054, 1060

(10th Cir 1996); *Miles v. Dorsey*, 61 F.3d 1459, 1471 (10th Cir. 1995), *cert. denied*, 516

U.S. 1062 (1996).

A.  Factual Basis

The federal Constitution does not require a factual basis for a guilty plea.

-13-

*Freeman v. Page*, 443 F.2d 493, 497 (10th Cir. 1971).  Section 2254 does not provide a remedy for a claim that a guilty plea lacked a factual basis.  *Sena v. Romero,* 617 F.2d 579, 581 (10th Cir. 1980) ("[Petitioner's] contention that the absence of a record showing a factual basis for his plea is an independent ground for invalidating the plea, is without merit.").  Only when the defendant claims his *factual innocence* while pleading guilty,

which is not the situation here, have state courts been constitutionally required to establish a factual basis for a plea.  *See Alford*, 400 U.S. at 37-39.

I have reviewed the transcript of the September 27, 2001, providency hearing.  I find no statement of innocence by Mr. Fry in the transcript.  I do find, however, a very detailed explanation of the charge of kidnapping by the prosecutor.  The explanation, which was presented to the state trial court in the presence of Mr. Fry, sets forth in detail why Mr. Fry was charged with kidnapping.  The prosecutor also stated as follows:

> Your Honor, so the record is unmistakable, Mr. Fry, Ms. Cooper, and I have arrived at a proposed disposition.  Mr. Fry had a chance to think about it, sleep on it, and ask any questions that he wanted to have the answer to and also to talk to anybody who he wishes to by telephone to get their advice.  Just this day, Ms. Cooper and I visited Mr. Fry and went over his options, the circumstances, and any questions that he has.

*See People of the State of Colorado v. Fry*, Nos. 01-CR-0352, 98-CR-1360, September 27, 2001 Hearing at 12 (Oct. 3, 2001).

Mr. Fry offered no opposition to the prosecutor's statement and in response to the trial court judge's questions responded that he had read the plea agreement, that

he had enough time to talk with both the prosecutor and his attorney about the plea, and that he asked them questions about things he did not understand.  *Id.* at 14.  He further stated that he understood what the district attorney had said, that he had enough time to get all his questions answered, and that there was nothing about the plea agreement that he did not understand.  *Id.* at 14-15.

Mr. Fry responded "no" in answer to the prosecution's question whether he had misspoken as to Mr. Fry's intent that he is willing to plead guilty to kidnapping without the prosecution being able to establish a factual basis.  *Id.* at 38.  Applicant also replied to the trial court that he pled guilty to the kidnapping charge because he did not want to get life without parole.  *Id.* at 41.  Mr. Fry further stated that he and his attorney decided that was the best way to go, and it was in his best interest to do so.  *Id.*

Based on my review of the transcript, I find that Applicant's factual basis claim lacks merit.  Furthermore, I find that the Colorado Court of Appeals' decision regarding Mr. Fry's factual basis claim is not contrary to or an unreasonable application of established federal law.

### B.  Investigation and Mitigating Evidence

To the extent that Applicant asserts in Claim One that defense counsel failed to investigate and inform him about possible available defenses due to mitigating evidence, the Court will address these issues under Applicant's ineffective assistance of counsel claim.

### C.  Elements of the Offense

There is no requirement as a matter of federal constitutional law that the state

trial court review the elements of each offense before accepting a voluntary and intelligent guilty plea. ***United States v. Davis***, 929 F.2d 554, 557 (10th Cir. 1991). The record need only show a voluntary and intelligent plea. ***Sena***, 617 F.2d at 580.

Applicant asserts that neither defense counsel nor the prosecuting attorney explained the elements of the offense, specifically how the crime of violence statute applies to the second-degree kidnapping offense. I find, however, that the mandatory sentencing which involves the crime of violence statute, to which Applicant refers, was identified in the Request to Plead Guilty (Rule 11 Advisement) on Page Three and was

referred to by the prosecution in the transcript of the providency hearing, ***Fry***, Nos. 01-CR-0352, 98-CR-1360, September 27, 2001, Hearing at 16.

The prosecutor asked the trial court judge to "speak to the mandatory sentence for a crime of violence." ***Fry***, Hearing at 15. The prosecutor further told the trial court that the mandatory sentence for a crime of violence was an addition to the plea agreement and that the charge was initialed by Mr. Fry. ***Id.*** at 16. The trial court agreed with the prosecutor's request and explained to Applicant the following:

> The Court: All right. The effect of the mandatory sentencing count–that's not a separate crime. But what that does is, it has an effect on you. It's the kind of thing with regard to the charges that you are pleading guilty to and indicates that it has to be a sentence to the prison and that it has to be a particular–it requires the sentence that you get on the murder in the second degree to be in a certain range. And that can be up to the maximum range; and the maximum range here being 48 years for murder in the second degree and 12 years for second-degree kidnapping. That's the effect of the mandatory sentencing count.

-16-

*Id.* at 16.  Furthermore, the trial court judge asked Mr. Fry whether or not he understood the court's explanation of the mandatory sentencing to which he responded that he did.  *Id.* at 16.

As for an explanation of the elements of the crime of murder in the second degree and the crime of kidnapping in the second degree, the prosecution provided in great detail the elements of each offense and what the prosecution must prove beyond a reasonable doubt in each crime.  *Id.* at 25–29.  Throughout the explanation, the prosecution asked Applicant if he understood what was being explained to which Mr. Fry replied that he did.  *Id.*  The prosecution also reviewed the evidence that the state would present if Applicant desired to plead not guilty and proceed to a trial.  *Id.*  I find, from review of the hearing transcript and the plea agreement, Mr. Fry understood not only the elements of the offense but also how the crime of violence statute applies to the second-degree kidnapping charge.  Applicant's elements-of-the-offense claim lacks merit.

### D.  Plea Based on False Information

To the extent Applicant is asserting that his plea is invalid because the prosecutor relied on inaccurate information regarding the death of the victim, Applicant fails to substantiate any facts which were unavailable or unknown to him when he pled. There is no reason to believe plaintiff did not have a full and fair opportunity to present a defense to counter any disputed facts as stated by the prosecutor.  Applicant's claim lacks merit.

### E.  Ability to Explain What Happened

Applicant asserts that his plea is invalid because both his counsel and the prosecutor knew that the victim's death was an accident and that the state courts have not afforded him the opportunity for an evidentiary hearing so that he may explain in his own words what happened.  I find, however, that Mr. Fry had the opportunity at the time of his providency hearing to contest the findings surrounding the victim's death and to set forth any disagreement he may have had with the findings.  Applicant failed to do so.

The prosecution stated that the evidence on which they would rely included the confession by Ms. Rainbolt.  If as Mr. Fry states he believed the testimony by Ms. Rainbolt was less than credible and that the victim's death was accidental he had opportunity at both the providency hearing and at the time Ms. Rainbolt testified under oath, regarding the Applicant's involvement in the death of the victim, to contest Ms. Rainbolt's testimony, but he failed to do so.  *Fry*, Hearing at 36 and 39.

Furthermore, Applicant argues that he was entitled to an evidentiary hearing in his Rule 35(c) proceeding, where he could explain how the victim was killed.  Pursuant to ***Ardolino v. People***, 69 P.3d 73 (Colo. 2003), a Colorado court may deny a Rule 35(c) motion without an evidentiary hearing when the motion, the files, and the record in the case clearly establish that the allegations presented in the motion are without merit and do not warrant relief.  Based on the above findings, I ascertain that the state trial court did not error when it denied Mr. Fry an evidentiary hearing for the purpose of explaining how the victim was killed.  Mr. Fry fails to show how the denial of an evidentiary hearing involved any unreasonable application of a clearly established

federal law.  Therefore, Applicant's claim that he was denied the ability to state in his words how the victim was killed lacks merit and fails to state a claim for habeas relief.

2.  Ineffective Assistance of Counsel

Applicant asserts that he was denied effective assistance of counsel because defense counsel failed to conduct even a rudimentary investigation into the facts and law involved in his case.  (Second Am. Application at 6.)  Mr. Fry contends that counsel (1) failed to investigate Applicant's claims that the death of the victim was an accident, (2) failed to interview a single witness who would corroborate a description of the events, (3) failed to have a doctor examine Applicant and determine his mental state, (4) advised Applicant to enter a plea of guilty to a crime he did not commit, (5) failed to submit any pretrial motions, in particular to impeach a state witness for habitual lying, (6) failed to interview a state expert witness to determine that the victim was not strangled, (7) failed to inform Applicant of the valid affirmative defenses available to him including heat of passion and use of deadly force against an intruder, (8) failed to hire an investigator, and (9) failed to introduce any mitigating evidence.  (Second Am. Application at 5-B and 6-A and Dec. 13, 2006, Reply at 10.)  Applicant contends that if all of the above listed items are considered the first prong of *Strickland* is satisfied. (Dec. 13, 2006, Reply at 11.)

In the Answer, Respondents argue that Applicant's ineffective assistance of counsel claims are conclusory and vague.  (Answer at 17.)  Respondents contend that Applicant fails to allege what defense might have been established by counsel if he had interviewed state witnesses or what would have been gained if he had litigated pretrial

motions.  (Answer at 17-18.)  Respondents also contend that there is no indication that Mr. Fry's mental capacity would provide a defense to the first-degree murder count with which he was initially charged.  (Answer at 18.)  Finally, Respondents assert that, although Applicant argues that the victim's death was accidental, his actions in having disposed of her body in a different state and his statement that he "should have pulled the bitch's teeth out" support a conclusion that the killing was not accidental. (Application at 18.)  Respondents conclude that no federal habeas corpus relief is warranted.  (Application at 18.)

It clearly was established when Mr. Fry was convicted that a defendant has a right to effective assistance of counsel.  ***See Strickland v. Washington***, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Fry must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  ***See id***. at 687-88. "Judicial scrutiny of counsel's performance must be highly deferential."  ***Id***. at 689. There is a "strong presumption" that counsel's performance falls within "the wide range of reasonable professional assistance."  ***Id***.  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  ***Id.***  Under the prejudice prong, Mr. Fry must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  ***Id.*** at 694.

The Supreme Court has held that this standard also applies in the context of a guilty plea.  ***See Hill v. Lockhart***, 474 U.S. 52, 57 (1985).  To show prejudice in the

-20-

context of a guilty plea, Mr. Fry must demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.  If Mr. Fry fails to satisfy either prong of the ***Strickland*** test, the ineffective assistance of counsel claim must be dismissed.  ***Strickland***, 466 U.S. at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *Id.* at 698.

A defendant may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in ***McMann v. Richardson***, 397 U.S. 759, 770-71 (1970).  In ***McMann***, the Court determined that whether a plea is unknowing depends on if counsel's advice was within the range of competence demanded of attorneys in criminal cases, not on if a court retrospectively would consider counsel's advice to be right or wrong.  Id.

"When an involuntariness [of a guilty plea] claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." ***Worthen v. Meachum***, 842 F.2d 1179, 1184 (10th Cir. 1988) (citing ***Hill v. Lockhart***, 474 U.S. 52, 56 (1985)), overruled on other grounds by ***Coleman v. Thompson***, 501 U.S. 722 (1991).

A.  Investigation/Accidental Death

In the Second Amended Application, Mr. Fry contends trial counsel failed to investigate his claim that the victim's death was an accident.  (Second Am. Application at 6.)  Applicant also asserts that the cause of death by strangulation as stated by the

prosecution is not factual or accurate.  (Dec. 13, 2006, Reply at 9.)  In the Answer,

Respondents contend that although Mr. Fry asserts that the killing was accidental the

fact that he disposed of the victim's body in a different state and that he states that

''should have pulled the bitch's teeth out'' supports a conclusion that the killing was not

accidental.  (Answer at 18.)

The Colorado Court of Appeals, with respect to Applicant's investigation claim,

found the following:

> While a defendant need not set forth evidentiary support
> for the allegations in a Crim. P. 35(c) motion, it must contain
> adequate factual assertions supporting the claims for relief
> requested therein.  **People v. Bossert**, 772 P.2d 618, 620
> (Colo. 1989).
>
> Here, defendant failed to support his assertions with any
> reasonable specificity.  He fails to state what an
> investigation
>
> would have disclosed or what an investigator would have
> discovered that would have been helpful to his case.

**Fry**, No. 04-CV-0201 at 6-7.

Upon review of the opening brief that Mr. Fry submitted to the Colorado Court of

Appeals challenging the effectiveness of his trial counsel, I find, like the state court of

appeals, that Applicant failed to assert any basis for an investigation that would

discover support of his claim that the victim's death was an accident.

Now in the instant action, Applicant asserts that the victim constantly harassed

him, stalked him, and provoked him to anger.  (Second Am. Application at 5-A.)

Applicant further asserts that on the day that he killed the victim, his ex-girlfriend, she forced her way into his apartment, a heated argued ensued, and he punched the victim twice in the face, upon which she landed in the bath tub and only when he reached to grab her did he realize she was dead.  (Second Am. Application at 5.)

Although Mr. Fry did not assert the above allegations in the opening brief he submitted to the Colorado Court of Appeals in his Rule 35(c) postconviction motion and the claims are procedurally defaulted, I find that the allegations he presents in the instant action provide no basis for finding support as to what an investigation would disclose.  Therefore, Mr. Fry's claim that trial counsel was ineffective when he failed to investigate and pursue Applicant's claim that the killing of the victim was accidental lacks merit.  Applicant fails to demonstrate that but for trial counsel's failure to investigate that the victim's death was an accident he would not have pled guilty and would have insisted on going to trial.

B.  Interview Witnesses/Corroborating Defense

In the Second Amended Application and in the Reply filed December 13, 2006, Mr. Fry asserts that trial counsel failed to interview any witnesses.  Applicant also asserts that statements made by state witness, Crystal Lee, and Jerry Nelson, an eyewitness, would support his claim that he was stalked by the victim.  (Second Am. Application at Ex. C.)  Applicant further asserts that the victim constantly provoked Applicant and that statements by Patty Feathers and O. J. Fletcher would support this claim.  (Second Am. Application at Ex. C.)  Applicant also contends that the police

report on the incident involving Applicant's use of a bow and arrow against the victim fails to include statements by several witnesses that would support his claim that the victim was vandalizing Applicant's truck when Applicant used the bow and arrow to protect his property from her.  (Second Am. Application at Ex. C.)

Mr. Fry asserts additional claims in the June 4, 2007, Supplement regarding statements by witnesses Connie Hammond and Moe Salazar that he claims he was not aware of until after his conviction was entered.  (June 4, 2007, Supplement at 1-2.)  Mr. Fry asserts that Connie Hammond stated that Applicant told her all he did was hit the victim and she did not feel a thing, which proves that there was not premeditation or intent.  (June 4, 2007, Supplement at 4-5.)  Applicant also asserts that witness Moe Salazar stated, after a lengthy interrogation, that victim's death just happened, which shows that there was no premeditation or intent on Applicant's behalf.  (June 4, 2007, Supplement at 4.)  Mr. Fry further contends that witness Michele Rainbolt, a witness known to have provided materially false information, was the only witness to state that Applicant strangled the victim.  (June 4, 2007, Supplement at 2 and 4.)

Applicant further asserts that witness Crystal Lee, the victim's roommate, stated to the police that the victim stalked Applicant by sitting outside of his apartment and looking at his window.  (June 4, 2007, Supplement at 5.)  Mr. Fry also asserts that numerous other witnesses would testify, including police officers, that Applicant did not leave his home to go in search of the victim.  (June 4, 2007, Supplement at 5.) Applicant further states that he did not receive copies of the statements made by witnesses Lee, Nelson, Hammond, and Salazar until January 2002, after he pled guilty.

(June 4, 2007, Supplement at 1-2.)

In response to Applicant's claims, Respondents argue that the Colorado Court of Appeals ruled Mr. Fry had failed to support his claims regarding counsel's failure to interview witnesses. (Answer at 17.) Respondents further argue that, although Applicant contends that counsel should have interviewed witness Michelle Rainbolt, he does not allege what defense might have been established by this witness. (Answer at 17-18.) The Colorado Court of Appeals found that Applicant failed to support his ineffective assistance of counsel claim regarding trial counsel's failure to interview witnesses with any specificity. *Fry*, No. 04-CA-0201, at 6-7.

I have reviewed with great detail Applicant's opening brief and reply brief that he filed in the state court of appeals and his petition for certiorari that he filed in the Colorado Supreme court his Rule 35(c) postconviction motion. (Answer at Exs. A, C, and E.) I find that in the postconviction motion, Mr. Fry raised only general allegations regarding his ineffective assistance of counsel claims, including his assertion that his trial counsel failed to interview witnesses. In the instant action, however, Applicant asserts specific allegations that he claims would support his innocence of premeditated murder.

I conclude, therefore, that Applicant has failed to exhaust his failure to interview claim. *See Demarest v. Price*, 130 F.3d 922, 939 (10th Cir. 1997). Mr. Fry knew of the statements made by the witnesses identified above prior to filing his postconviction motion, and, yet, he failed to identify any specific allegations regarding trial counsel's

failure to interview each of the witnesses.  The claim, therefore, is procedurally defaulted, and Mr. Fry fails to demonstrate cause and prejudice or a fundamental miscarriage of justice for not raising the claim in his state postconviction motion.

Even if I were to find that Applicant had exhausted the failure to interview claim, the claim lacks merit.  The witnesses' testimonies do not provide a basis for a finding that Mr. Fry's acts against the victim were done without premeditation.  To the contrary, the police report regarding Applicant's use of a bow and arrow against the victim prior to her death and witnesses' statements that the victim would not leave Applicant alone, may only assist in proving that the murder was premeditated.

As for Ms. Rainbolt's testimony and Applicant's argument that her testimony was not credible because she had provided false material evidence, the claim is without merit.  Upon review of Ms. Rainbolt's testimony, I find that she did not change her story with respect to Applicant's statement to her that he strangled the victim, she only changed her statement as to **when** Applicant told her that he strangled the victim and as to **where** Applicant may be located when the police were searching for him. (Answer at Ex. G. Apr. 24, 2001, Transcript, at 86-87.)  Therefore, I find that trial counsel was not ineffective and Mr. Fry would not have decided to plead not guilty and insisted on proceeding to trial but for his trial counsel's failure to interview the witnesses.

### C.  Evaluation of Applicant's Mental State

In the Second Amended Application, Mr. Fry asserts that trial counsel was ineffective when he failed to have a qualified doctor determine his mental state at the

time of the offense, which is a critical element of a second-degree murder charge. (Second Am. Application at 6-A. and Dec. 13, 2006, Reply at 10.)

In response to Applicant's claim, Respondents argue that there is no indication that Mr. Fry's mental state would provide a defense to the first-degree murder count with which he was initially charged.  (Answer at 18.)  Respondents further assert that "[d]efense attorneys do not have a 'general obligation to explore their client's mental capacity in every case,' and are not required to 'pursue defenses that are not reasonably suggested by the apparent factual circumstances surrounding the crime charge or the subsequent demeanor and conduct of the client,' "  *See Jones v. Page*, 76 F.3d 831, 841 (7th Cir. 1996); *see also Balfour v. Haws*, 892 F.2d 556, 564 (7th Cir. 1989) ("defendant displayed many signs that he was sufficiently in touch with reality to understand his circumstances and to aid his attorney" so attorney's decision to not investigate mental capacity was reasonable).  (Answer at 18.)

The Colorado Court of Appeals found that Applicant's claim regarding trial counsel's failure to request a psychiatric examination was insufficient.  *Fry*, No. 04-CA-0201, at 7 (Colo. App. May 12, 2005).  The state court of appeals found that Mr. Fry failed to allege that he suffers from any mental illness which affected his decision to plead guilty.  *Id.*  The state court of appeals also found that the "mere 'possibility' that Applicant might have been found guilty of a lesser included offense based on an unidentified mental state does not present an issue of fact requiring a hearing."  *Id.*

With respect to a trial counsel's responsibility to investigate a defendant's mental history "[t]he adequacy or reasonableness of an attorney's action is necessarily

conditioned by the defendant's own actions or inactions." **See United States v. Miller**, 907 F.2d 994, 998 (10th Cir. 1990). Mr. Fry fails to assert that he provided trial counsel with any notice that an inquiry was necessary, nor does he claim that his demeanor should have led counsel to question his mental state. Furthermore, upon review of the state court transcripts of both the preliminary hearing and the plea hearing, I find no indication that Mr. Fry's mental state was at question. Therefore, I find that the Colorado Court of Appeals' decision is not contrary to or an unreasonable application of clearly established federal law. I further find that Mr. Fry fails to provide a basis for a reasonable probability that but for his trial counsel's failure to request an evaluation of Mr. Fry's mental state, he would have not pled guilty and proceeded to trial. Applicant's mental evaluation claim, therefore lacks merit.

      D.  Advisement to Plea to a Crime not Committed

      I find that Mr. Fry's advisement claim lacks merit based on my findings above under "Section 1. Plea Violates Sixth Amendment." I further find that Mr. Fry's claim that trial counsel tricked him into entering a guilty plea is without merit. Applicant contends that trial counsel told him if he pleaded guilty he would show him how to withdraw the plea in two years and nine months when the State would not be able to find witnesses. (Dec. 13, 2006, Reply at 11.)

      At his plea hearing, the trial court asked Mr. Fry if "anybody threatened or pressured [him] in any way other than give [him] legal advice to get [him] to plead guilty here." **Fry**, Nos. 01-CR-0352, 98-CR-1360, September 27, 2001, Hearing at 42. Mr. Fry answered, "No sir." **Id.** Trial counsel's alleged offer to help Applicant withdraw his

plea at a later date is not legal advise, but, as presented by Applicant, an alleged

attempt by counsel to pressure him into pleading guilty.  Mr. Fry had ample opportunity

to inform the trial court that trial counsel offered to assist Applicant in the future to

withdraw his plea.  I find that the claim is self-serving and lacks merit.

### E.  No Pretrial Motions/Impeach State Witness

Mr. Fry asserts that trial counsel failed to submit a single pretrial motion.

(Second Am. Application at 6-A.)  He further asserts that trial counsel should have filed

a motion to impeach the State's witness, Michelle Rainbolt, for habitual lying.  (Second

Am. Application at 6-A.)

In the Answer, Respondents argue that Mr. Fry does not allege what defense

might have been established by litigating pretrial motions.  (Answer at 17-18.)

Although the Colorado Court of Appeals failed to specifically address Applicant's

pretrial motion claim, the state court of appeals found that his ineffective assistance of

counsel claims, including his pretrial motions claim, were not persuasive.  *Fry*, No. 04-

CA-0201, at 6.


Mr. Fry did not assert his impeachment claim in the opening brief he submitted

to the Colorado Court of Appeals in his Rule 35(c) postconviction motion.  The claim,

therefore, is procedurally defaulted, and Applicant fails to demonstrate either cause

and prejudice or a fundamental miscarriage of justice.  Nonetheless, even if the

impeachment claim was properly before this Court, as I found above, witness Rainbolt

was found to only have changed her statement as to when Applicant told her that he

strangled the victim and as to where Applicant may be located.  Therefore, Mr. Fry's claim of ineffective assistance of counsel with respect to impeachment of a state witness lacks merit.  Furthermore, Applicant fails to provide a basis for any claim that he would have pled not guilty and would have insisted on proceeding to trial.

F.  Expert Witness Interview/Strangulation

In the Second Amended Application, Mr. Fry asserts that the trial counsel was ineffective because he failed to interview the state expert witnesses to determine that the victim was not strangled and to prove that there was no evidence supporting witness Rainbolt's testimony that Applicant did strangle the victim.  (Second Am. Application at 6-A.)  Applicant further asserts in the June 4, 2007, Supplement that trial counsel knew before the preliminary hearing that the victim had not been strangled to death and that the autopsy report did not list a broken neck as part of the injuries to the victim, which might have indicated a possible cause of death of strangulation.  (June 4, 2007, Supplement at 2.)

Mr. Fry also asserts that the certificate of death clearly states that the victim's death was attributed to homicidal violence of "undetermined etiology," and the analysis of the victim's skeletal remains finds that "there is no unequivocal evidence of perimortem trauma."  (June 4, 2007, Supplement at 2.)  Based on this information, Applicant asserts that there is no finding of strangulation as a cause of death of the victim.  (June 4, 2007, Supplement at 2.)  Applicant contends that trial counsel was ineffective because he knew Applicant had not strangled the victim, but did not challenge the fact that there was no medical or forensic evidence that the victim was

strangled.  (June 4, 2007, Supplement at 2.)

In the Response to Applicant's June 4, 2007, Supplement, Respondents argue that the skeletal analysis and the autopsy report do not provide mitigating or exculpatory evidence.  (June 20, 2007, Resp. at 3.)  Respondents further argue that the report noted fractures, including a fracture of the victim's right mandible, and that contrary to Applicant's contentions, the evidence does not eliminate strangulation or prove that the cause of death was accidental.  (June 20, 2007, Resp. at 3.)

Mr. Fry did not specifically present the state-expert-witness claim to the Colorado Court of Appeals.  He only asserted that trial counsel failed to introduce mitigating evidence.  The state court of appeals found that the mitigating evidence claim lacked merit because Applicant failed to state what mitigating evidence counsel should have presented.  *Fry*, No. 04-CA-0201, at 7 (Colo. App. May 12, 2005).  The claim, therefore, is procedurally defaulted, and Applicant fails to demonstrate either cause and prejudice or a fundamental miscarriage of justice in his failure to raise a specific mitigating evidence claim in state court.

Nonetheless, even if the mitigating evidence claim was properly before this Court, I find that nothing in the evidence that Mr. Fry presents indicates that trial counsel was remiss in not interviewing state expert witnesses who provided evidence regarding the cause of death and the skeletal analysis.  Therefore, I find that nothing in either the autopsy report or the skeletal analysis mitigates or exculpates Mr. Fry and provides a basis that but for his trial counsel's failure to interview the state expert witnesses, he would not have pleaded guilty and would have insisted on going to trial.

Applicant's failure to interview expert witnesses claim is without merit.

G.  Affirmative Defenses

In the Second Amended Application, Mr. Fry asserts that trial counsel was ineffective because he failed to advise him of any valid or plausible affirmative defenses in consideration of the circumstances surrounding the case and Colorado law, including second-degree murder, heat of passion.  (Second Am. Application at 6-A.)  In the December 13, 2006, Reply, Applicant further asserts that trial counsel was ineffective in not discussing any real or plausible defense to the original charges such as the "Make- my-Day Law."  (Dec. 13, 2006, Reply at 10.)  Mr. Fry also contends that, when he responded in the affirmative to the prosecutor's question at the providency hearing that there was no affirmative defenses to excuse or justify the act he committed, he did not understand what the prosecutor meant by affirmative defense. (June 4, 2007, Supplement at 4.)

Mr. Fry contends that if trial counsel had interviewed the witnesses, including the witnesses identified above under Section "B. Interview Witnesses/Corroborating Defenses," there would have been support for an affirmative defense under either a heat-of-passion finding or the Make-my-Day Law.

In the Answer, Respondents assert that Applicant failed to support his claim regarding plausible defenses in his appeal to the Colorado Court of Appeals.  (Answer at 17.)  Respondents, however, fail to address Applicant's assertion that the heat-of-passion defense and the Make-My-Day Law would be two plausible defenses. Nonetheless, Mr. Fry failed to assert any grounds for a plausible defense in his state

postconviction motion.  The affirmative defense claim, therefore, is procedurally

defaulted, and Mr. Fry fails to demonstrate cause and prejudice or a fundamental

miscarriage of justice regarding his failure to assert any plausible defenses in his

postconviction motion.  The claim is improperly before this Court.

Even if the affirmative defense claim was properly before this Court, I find no

basis that but for his trial counsel's failure to present an affirmative defense, he would

not have pled guilty and would have insisted on going to trial.  As found above, the

witnesses' testimonies do not provide a basis for a finding that Mr. Fry's acts against

the victim were done without premeditation and that Mr. Fry may have a plausible

affirmative defense.  Applicant's affirmative defense claim lacks merit.

### H.  Hire Investigator

In the December 13, 2006, Reply, Mr. Fry asserts that trial counsel was

ineffective because he failed to hire an investigator in a capital murder case.  (Dec. 13,

2006, Reply at 10.)  As stated above, Applicant has failed to set forth any evidence that

had trial counsel investigated the evidence he would not have pleaded guilty and would

have insisted on going to trial.  I, therefore, find no basis that trial counsel was required

to hire an investigator and was ineffective for not doing so.  Applicant's investigator

claim lacks merit.

### I.  Mitigating Evidence

In the December 13, 2006, Reply, Mr. Fry asserts that trial counsel was

ineffective in not introducing any mitigating evidence including that the victim stalked

him, harassed him, vandalized his vehicle, and kicked the door open to his apartment.

(Dec. 13, 2006, Reply at 10.)  Based on the findings above in Section "B. Interview

Witnesses/Corroborating Defenses," any evidence of stalking, harassment, vandalizing

and forcefully entering Applicant's apartment may, contrary to Applicant's assertions,

prove that Applicant had intended to harm the victim when she came to his apartment

the night of the homicide.  Applicant again has failed to set forth any evidence that he

would not have pled guilty and would have insisted on going to trial.  Applicant's

mitigating evidence claim lacks merit.

### 3.  *Apprendi* and *Blakely* Claim

Mr. Fry argues that his sentence was enhanced illegally in violation of *Apprendi*

and *Blakely*.  (Second Am. Application at 6-F.)  Applicant asserts that the "sentence

and term imposed in this case has [sic] been illegally enhanced and/or aggravated to

exceed the stautory [sic] guidelines under Colorado law, without a specific finding by a

jury, or facts proven beyond a reasonable doubt."  (Second Am. Application at 6-F.)

Mr. Fry contends that he was sentenced under Colo. Rev. Stat. § 18-3-103, in the

aggravated range, to a forty-eight year sentence and that the charge is a crime of

violence, which mandates a sentence in compliance with Colo. Rev. Stat. § 16-11-309.

(Second Am. Application at 6-F.)  Applicant further contends that the State fabricated a

charge of second-degree kidnapping under Colo. Rev. Stat. § 18-3-302(1), which is not

a crime of violence, but then added a count of mandatory sentencing under § 18-3-

302(5), so that he received the maximum sentence of twelve years allowed under

Colorado law in the aggravated range for a class four felony.  (Second Am. Application at 6-F.)

Mr. Fry further asserts that the state court then declared the two separate aggravated sentences to be run consecutively in violation of Colo. Rev. Stat. § 18-1-408, causing his sentence to be a total of sixty years of incarceration.  Applicant concludes that he is factually only guilty of one crime but has had his sentence enhanced three separate times and is not factually guilty of second-degree murder. (Second Am. Application at 6-G.)

Also in the December 13, 2006, Reply, Mr. Fry asserts that he was never advised that he had a right to a jury determination of any aggravating factors after his plea.  (Dec. 13, 2006, Reply at 13.)  Applicant further asserts that he never admitted to any aggravating factors because in reality he did not commit a crime of kidnapping. (Dec. 13, 2006, Reply at 14.)

In the Answer, Respondents argue that Applicant's "aggravated range sentences of [forty-eight] years for second-degree murder and [twelve] years for second-degree kidnapping were authorized because each crime is a crime of violence."  (Answer at 20.)  Respondents further assert that second-degree murder is a ***per se*** crime of violence and that Applicant "pled guilty to a crime of violence sentencing count, applicable to both counts, which expanded the sentencing range under the crime of violence statute to the midpoint of the presumptive range to twice the maximum in the presumptive range."  (Answer at 20.)  Respondents, therefore, conclude that Mr. Fry's sentences were within the ranges authorized by statute for each offense.  (Answer at

21.)

The Colorado Court of Appeals also found that Applicant pled guilty to second-degree murder which is a *per se* crime of violence. *Fry*, No. 04-CA-0201, at 8.  The state court of appeals further found that Applicant pled guilty to a second-degree kidnapping charge that is not a *per se* crime of violence, but he was charged with a separate count of crime of violence under Colo. Rev. Stat. § 18-1.3-406(4) and (5). *Id.* The state court of appeals also determined that by pleading guilty to the count of a crime of violence his second-degree kidnapping charge became subject to a mandatory enhancement, which was explained to him several times by the trial court. *Id.* The state court of appeals concluded that Applicant's sentencing, therefore, was legal, and that to the extent he claims he should have been advised of his right to a jury he waived his trial rights when he pled guilty. *Id.*

Applicant's claim can only be reviewed under *Apprendi* because *Blakely* is not retroactive to convictions that became final before *Blakely* was announced. *See, United States v. Price*, 400 F.3d 844 (10th Cir. 2005).  Applicant's conviction became final in 2001; *Blakely* was decided on or about June 24, 2004.  Therefore, Applicant's reliance on *Blakely* affords him no relief.

In *Apprendi*, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

The Court of Appeals for the Tenth Circuit has opined that "no additional factfinding" is required for increased sentencing in connection with the enumerated

-37-

crimes which are *per se* crimes of violence, and that a defendant who pleads guilty to such a crime exposes himself to the mandatory sentence provided by the Colorado statutes. *See Vogt v. Novak*, 2005 WL 2767165 (10th Cir. 2005) (unpublished opinion).

As the Colorado Court of Appeals determined, and as is set forth in the transcript of the providency hearing, Mr. Fry was informed more than one time during the hearing that pleading guilty to the count of a crime of violence subjected his second-degree kidnapping charge to a mandatory enhancement. *Fry*, Nos. 01-CR-0352, 98-CR-1360, September 27, 2001, Hearing at 19, 20, and 25. Furthermore, Mr. Fry affirmed that he intended to plead guilty so he would not be exposed to a first-degree murder conviction and a life sentence without parole. *Id.* at 41. Mr. Fry's arguments that the Court must go beyond the record now and find his plea was fraudulent and made unknowingly are only self-serving claims.

Mr. Fry pled to second-degree murder, a class two felony, which under Colo. Rev. Stat. § 18-3-103(4) is a *per se* crime of violence. Applicant also pled to one count of a crime of violence under Colo. Rev. Stat. § 18-1.3-406 and to one count of second-degree kidnapping. Under Colo. Rev. Stat. § 18-1.3-401(8)(a), if a defendant is convicted of a crime of violence under § 18-1.3-406 the court is required to "sentence the defendant to a term of at least the midpoint in the presumptive range but not more than twice the maximum term authorized in the presumptive range for the punishment of a felony."

Under a class two felony the maximum sentence is twenty-four years. Colo. Rev.

Stat. § 18-1.3-401.  Because the second-degree murder charge was a crime of violence, in accordance with § 18-1.3-401(8)(a), Mr. Fry may be sentenced to forty-eight years, twice the maximum term, and still be sentenced within the statutory prescribed maximum.

Mr. Fry also pled guilty to second-degree kidnapping, a class four felony.  Colo. Rev Stat. § 18-3-302.  Under a class four felony the maximum sentence is six years. § 18-1.3-401.  However, Mr. Fry also pled to one count of a crime of violence, which allowed for Mr. Fry to be sentenced to twice the maximum term, equaling twelve years. Applicant's sentence for the second-degree kidnapping charge, therefore, is within the statutory prescribed maximum.  As for Applicant's claim that sentences should not be run consecutively, and he was convicted on three separate charges for the same offense, the claim lacks merit.

I, therefore, find that Mr. Fry was not sentenced to a term of imprisonment that exceeds the statutory maximum, and no *Apprendi* violation exists.

## V.  CONCLUSION

Based on the above findings, all of Applicant's claims lack merit.  Therefore, the Application will be denied.  Accordingly, it is

ORDERED that the Application is DENIED and the action is DISMISSED WITH PREJUDICE.  It is

FURTHER ORDERED that each party shall bear his own costs and attorney's

fees.  It is

FURTHER ORDERED that all pending motions are DENIED as moot.

Dated:  November 16, 2007

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge